**LaSchelle HOOD, a Minor, by her Father and Next Friend, G. E. Hood, Jr., Plaintiff in Error,**

v.

**FORMATRON CORPORATION et al., Defendants in Error.**

No. 43021.

Supreme Court of Oklahoma.

June 22, 1971.

Rehearing Denied Sept. 21, 1971.

Glenn A. Young, Sapulpa, for plaintiff in error.

Sanders & McElroy, Tulsa, for defendant in error, Formatron Corp.

Thomas Rucker & Tabor, Don Hopkins, Tom Kellish, Tulsa, for defendant in error, State Supply.

John H. Tucker, of Rhodes, Hieronymus, Holloway & Wilson, Tulsa, for defendant in error, D. J. Hensley, d/b/a Lakeland Speed Laundry.

JACKSON, Justice:

Plaintiff LaSchelle Hood, a child a little over two years old, went with her mother to a laundromat in Muskogee. While the mother was attending to her laundry, the child climbed into a chair to which was affixed a coin-operated hair-dryer. From pictures in evidence, it appears that the heating mechanism of the dryer was underneath, or in the back of, the chair. A square metal shaft, described as a heated air duct, extended upward from the back of the chair and performed the dual function of serving as a conduit for the hot air and supporting the hood of the dryer. The hood was affixed to the back of the shaft by a hinge in such fashion that the hood could be moved upward and backward by an adult preparing to sit in the chair, then downward and forward to place it in position over the user's head for hair-drying purposes.

The hinged joint at the back of the shaft, was such that when the hood was in the upward position there was what may be described as an "open throat" opposite the hinge and facing the front of the chair which closed as the hood was brought forward and downward, bringing together two sharp metal lips. This opening was unguarded.

Although no witness actually saw the accident, it appears that LaSchelle climbed into the chair facing the back and inserted the second finger of her right hand partially into the "open throat". The hood then fell or was pulled forward and downward, cutting off the end of the finger with what plaintiff's counsel describes as a "guillotine" action.

Plaintiff, through her father and next friend, sued the manufacturer of the dryer, Formatron Corporation; the distributor, State Supply, Inc.; KRK Enterprises, Inc., the owner of the dryer which had placed it in the laundromat under a profit sharing agreement; and D. J. Hensley, the owner and operator of the laundromat.

██ Liberally construed, the allegations of the petition show that plaintiff relied upon two theories for recovery; they were sufficient both as an action for damages for breach of implied warranty, and as an action for damages for negligence. Plaintiff also alleged among other things:

"  *  *  *  That the hair-dryer had been designed, manufactured, distributed and installed by the defendants with full knowledge that an expected, reasonable and intended use thereof would be in public laundries of a type similar to the said Lakeland Speed Laundry. All the defendants knew or should have known that it was the custom of parents to bring their small children with them when doing their laundry or drying their hair in said place of business and that small children were daily in and about said premises with their parents with the full knowledge and consent of the owner. All defendants knew or should have known that such hair-dryer was attractive to, and should be properly and adequately safeguarded for, the small children which defendants knew would be exposed to and be in the vicinity of the intended use thereof.  *  *  *".

These allegations were sufficient to invoke the duty of care owed to a child of tender years. Hostick v. Hall, Okl., 386 P.2d 758; Beatrice Foods Co. v. Jennings, 206 Okl. 688, 246 P.2d 347. In this case, the trial court instructed the jury that where a proprietor invites children upon his premises, "he has a duty to keep his property reasonably safe as far as they are concerned". He also instructed that as a matter of law, the plaintiff in this case could not be guilty of contributory negligence.

Since we have concluded that the judgment for defendants must be reversed because the court erred in giving instruction number 6, no further summary of the evidence or pleadings is required.

In other instructions to the jury, the court placed upon the defendants the duty

to use ordinary care in the design of the hair-dryer, and ordinary care to ascertain the condition of the dryer to see that it was safe for the use for which it was intended. Since these are duties not ordinarily owed to trespassers, we may assume that the court considered the child plaintiff to be an invitee and not a trespasser, although there was no specific instruction to that effect. The record before us does not disclose that children were forbidden to accompany their mothers to the laundromat.

■ However, in instruction number 6, the jurors were told, among other things, that the manufacturer of an appliance such as the hair-dryer " * * * owes a duty *merely* to make it free from latent defects and concealed dangers; and * * * if the machine is without any latent defect, and if its functioning creates no danger or peril that is not known to the user, then the manufacturer has satisfied the demands of the law" (emphasis supplied).

In view of the age of the child we agree that this instruction was inapplicable and should not have been given in this case. Under substantially uncontradicted evidence, the "open throat" was plainly visible. This being true, the jury could conclude that there was no latent defect or concealed danger, and that the defendant manufacturer had "satisfied the demands of the law". Of course the defect or danger in this case lay not in the fact that the open throat existed, but in the fact that when the hood was lowered the closing of the throat could cut off the finger of a child too young to appreciate the danger. Although an adult plaintiff might have been expected to know what would happen when the throat closed, thus justifying an instruction distinguishing between latent and obvious defects, such knowledge may not be imputed to the two-year-old plaintiff in this case.

The quoted language from instruction number 6 was apparently taken from an opinion of the New York Court of Appeals in a negligence action, Campo v. Scofield, 301 N.Y. 468, 95 N.E.2d 802; cited by defendants. In that case the plaintiff, who was injured when his hands were caught in an "onion topping" machine, was an adult.

From the briefs, it appears that the evidence as to LaSchelle's age and what happened to her in the laundromat, and as to the so-called "guillotine" action of the hair-dryer when the hood was lowered, was substantially uncontradicted. We are therefore forced to the conclusion that the jury's verdict for defendants in this case was probably based upon a finding, authorized by instruction number 6, that the defect was obvious and known to the plaintiff in this case. The instruction was therefore prejudicial.

In a separate answer brief, defendant Hensley, the owner of the laundromat, argues that instruction number 6 concerns the manufacturer only and that, even if it is erroneous, the judgment in Hensley's favor should be affirmed.

We agree that on its face, the instruction concerns the manufacturer only, but we think the record conclusively shows that from the factual standpoint it also operated prejudicially in Hensley's favor, and for the same reason. As to the manufacturer and other corporate defendants, the gist of the action was defective design. As to Hensley, the gist of the action was his failure to maintain his premises in a reasonably safe condition for invitees. Although the duties were stated differently, the thing which allegedly made the design defective—the cutting action as the throat closed—was also the thing which allegedly made Hensley's premises unsafe for the plaintiff invitee. Therefore, a jury conclusion under instruction number 6 that the design was not defective because the peril was obvious to the two-year-old plaintiff would require a corollary conclusion that, since the design was not defective, Hensley had maintained his premises in a safe condition.

The judgment is reversed and the cause is remanded to the trial court with directions to grant plaintiff a new trial.

WILLIAMS, BLACKBIRD, IRWIN, HODGES, LAVENDER and McINERNEY, JJ., concur.

DAVISON, V. C. J., concurs as to Hensley and dissents as to other defendants.